**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE RBC DAIN RAUSCHER OVERTIME LITIGATION | MASTER FILE: 06-03093 JRT-FLN |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS AND COLLECTIVE ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

      A.    Description of the Litigation ...................................................... 3

      B.    Settlement Negotiations............................................................. 8

III.  TERMS OF THE PROPOSED SETTLEMENT .................................................. 11

IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE
      SETTLEMENT............................................................................................ 16

      A.    The Proposed Settlement is Entitled to an Initial Presumption of Fairness 16

      B.    The Eighth Circuit's Standards Governing Class Action Settlements ........ 20

            1.   The Merits of Plaintiffs' Case When Weighed Against the Settlement
                 Terms Favor Approval of the Proposed Settlement............................... 21

                 a.  The Merits of Plaintiffs' Case ......................................... 21

                 b.  The Terms of the Stipulation Favor Preliminary Approval ............. 23

            2.   Defendant's Financial Condition ............................................ 24

            3.   The Complexity and Further Expense of Continued Litigation Weighs
                 in Favor of the Proposed Settlement ...................................... 24

V.    THE COURT SHOULD CERTIFY THE CLAIMS OF THE CLASS.................. 26

      A.    The Class May Be Properly Certified Under Rule 23(a) for Settlement ........
            Purposes Only........................................................................... 29

            1.   Rule 23(a)(1)—"Numerosity" ................................................. 29

            2.   Rule 23(a)(2)—"Commonality" .............................................. 30

            3.   Rule 23(a)(3)—"Typicality" ................................................. 31

            4.   Rule 23(a)(4)—"Adequacy of Representation"..................................... 33

i

B.   The Class May Be Properly Certified Under Rule 23(b) for Settlement Purposes Only ........................................................................................ 33

C.   The Class Satisfies the Requirements of 29 U.S.C. § 216(b) ..................... 36

VI.   THE PROPOSED NOTICE PLAN ......................................................................... 37

VII.   THE PLAN OF ALLOCATION ............................................................................ 40

VIII.   CONCLUSION ....................................................................................................... 42

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987) ......................................................................... 30

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ....................................................................... 27, 34, 35

*Arkansas Educ. Ass'n v. Bd. of Educ.*,
  446 F.2d 763 (8th Cir. 1971) ......................................................................... 29

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) ............................................................. 17, 20, 27

*Babcock v Computer Assocs. Int'l, Inc.*,
  212 F.R.D. 126 (E.D.N.Y. 2003) ................................................................... 34

*In re BankAmerica Corp. Secs. Litig.*,
  210 F.R.D. 694 (E.D. Mo. 2002) ................................................................... 24

*Bowling v. Pfizer, Inc.*,
  143 F.R.D. 141 (S.D. Ohio 1992) ................................................................. 27

*Buchet v. ITT Consumer Fin. Corp.*,
  845 F. Supp. 684 (D. Minn. 1994) ............................................................... 18

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ........................................................................ 26

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................................................. 18, 20

*In re Charter Commc'ns, Inc. Secs. Litig.*,
  No. 02-CV-1186, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ................... 17, 20, 25

*Chatelain v. Prudential-Bache Secs., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ............................................................... 18

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ......................................................................... 18

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996) ...................................................................... 19

*Consol. Rail. Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ........................................................................... 29

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...................................................................... 17

*Crenshaw v. Maloney*,
  13 Fair Emp't Practice Cases (BNA) (D. Conn. May 6, 1976) ......................... 29

*Cruz v. Lawson Software, Inc.*,
  764 F. Supp. 2d 1050 (D. Minn. 2011) .......................................................... 22

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*,
  375 F.2d 648 (4th Cir. 1967) ........................................................................ 29

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ........................................................................ 32

*In re Diebold ERISA Litig.*,
  No. 06-cv-170 (N.D. Ohio) .......................................................................... 28

*Farthing v. United Healthcare of the Midwest, Inc.*,
  No. 98-cv-4, 2000 U.S. Dist. LEXIS 21995 (W.D. Mo. 2000) ...................... 32

*Forbush v. J.C. Penney Co., Inc.*,
  994 F.2d 1101 (5th Cir. 1993) ...................................................................... 30

*Glass v. UBS Fin. Servs., Inc.*,
  No. 06-4068, Slip Op. (N.D. Cal. Aug. 25, 2006) ......................................... 28

*In re Global Crossing Secs. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................24, 29, 32

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975)....................................................................20, 21

*In re IBP, Inc. Secs. Litig.*,
  328 F. Supp. 2d 1056 (D.S.D. 2004)............................................................. 24

*Janney Montgomery Scott LLC Fin. Consultant Litig.*,
  No. 06-cv-3202, Slip Op. (E.D. Pa. Feb. 9, 2009) ........................................ 29

iv

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978)..............................................................................35

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
  921 F.2d 1371 (8th Cir. 1990)......................................................................17, 27

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001), *cert. denied,* 534 U.S. 973 (2001)..........................34

*Lockwood Motors, Inc. v. Gen. Motors Corp.*,
  162 F.R.D. 569 (D. Minn. 1995).................................................................30, 35

*Lynch v. United Servs. Auto. Ass'n*,
  491 F. Supp. 2d 357 (S.D.N.Y. 2007)..................................................................36

*Marisol A. v. Guiliani*,
  126 F.3d 372 (2d Cir. 1997)..............................................................................30

*Mathers v. Northshore Mining Co.*,
  217 F.R.D. 474 (D. Minn. 2003).........................................................................33

*In re Minolta Camera Prods. Antitrust Litig.*,
  668 F. Supp 456 (D. Md. 1987) .........................................................................18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..........................................................................................37

*Nadeau v. Wells Fargo Bank, Nat'l Ass'n*,
  No. 10-CV-4356, 2011 WL 1633131 (D. Minn. Apr. 26, 2011)..........................28, 30

*Nerland v. Caribou Coffee Co., Inc.*,
  564 F. Supp. 2d 1010 (D. Minn. 2007) ................................................................32

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)..............................................................................23

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217 (1983)..........................28

*In re Oxford Health Plans, Inc., Secs. Litig.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) .......................................................................32

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................19

*Paxton v. Union Nat'l Bank*,
  688 F.2d 552 (8th Cir. 1982)........................................................................29, 30, 31

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)................................................................................34, 35

*In re Prudential Secs. Inc. Ltd. P'ships Litig.*,
  164 F.R.D. 362 (S.D.N.Y. 1996) ..............................................................................37

*In Re RBC Dain Rauscher Overtime Litigation*,
  (D. Minn. Case No. 06-03093 JRT-FLN) ...............................................................5,6

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)................................................................................29, 32

*Robin Drug Co. v. PharmaCare Mgmt. Servs., Inc.*,
  No. 03-cv-3397, 2004 WL 1088330 (D. Minn. May 13, 2004)..................................35

*Scholtisek v. Eldre Corp.*,
  229 F.R.D. 381 (W.D.N.Y. 2005) .............................................................................36

*Simel v. JP Morgan Chase & Co.*,
  No. 05-cv-9750 (S.D.N.Y.) .......................................................................................27

*Smith v. United Healthcare Servs.*,
  No. 00-CV-1163, 2002 WL 192565 (D. Minn. Feb. 5, 2002) ...................................31

*Steinberg v. Morgan Stanley & Co.*,
  No. 06-2628, Slip. Op. (S.D. Cal. Jan. 8, 2008)......................................................29

*Stevens v. Safeway, Inc.*,
  No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008)...................28

*In re Traffic Exec. Ass'n.–E. R.Rs.*,
  627 F.2d 631 (2d Cir. 1980).....................................................................................19

*In re UnitedHealth Group Inc. Shareholder Derivative Litig.*,
  631 F. Supp. 2d 1151 (D. Minn. 2009) ....................................................................19

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988).............................................................................18, 20

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D. N.Y. 2003).....................................................................18

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ............................................................................. 30

*Weigner v. City of N.Y.,*
    852 F.2d 646 (2d Cir. 1988) ...................................................................... 37

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ........................................................................ 17

*White v. Baptist Mem'l Health Care Corp.,*
    No. 08–2478, 2011 WL 1883959 (W.D. Tenn. May 17, 2011) .................. 23

*White v. NFL,*
    836 F. Supp. 1458 (D. Minn. 1993) .......................................................... 17

*Wiener v. Roth,*
    791 F.2d 661 (8th Cir. 1986) ..................................................................... 17

*In re Wireless Tel. Cost Recovery Fees Litig.,*
    No. 03-MD-015, 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) ............... 24

*In re WorldCom, Inc. Secs. Litig.,*
    219 F.R.D. 267 (S.D.N.Y. 2003) .............................................................. 29

*Zivali v. AT & T Mobility, LLC,*
    No. 08 Civ. 10310, 2011 WL 1815391 (S.D.N.Y. May 12, 2011) ............ 22

*In re Zurn Pex Plumbing Prods. Liability Litig.,*
    267 F.R.D. 549 (D. Minn. 2010) ............................................................... 30

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

28 U.S.C. §1715 ............................................................................................. 39

29 U.S.C. § 201, *et seq.* ......................................................................... passim

29 U.S.C. § 216(b) .................................................................................. passim

Employee Retirement Income Security Act of 1974 ........................................ 1

FED. R. CIV. P. 23 .................................................................................... passim

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

California Labor Code, Industrial Welfare Commission Wage Orders, California
    Business and Professions Code ................................................................... 1

Article X, Section 24 of the Florida Constitution................................................................1

New York Labor Law.............................................................................................................1

**OTHER AUTHORITIES**

1 Herbert Newberg & Albert Conte, *Newberg on Class Actions* § 3:05 (2d ed. 1985)....................................................................................................................17, 30

3B Moore's Federal Practice ¶ 23.1.24[2] (2d ed. 1992)...................................................19

## I.    INTRODUCTION[1]

Plaintiffs Carlos Alvarez, Ana Blumberg-Markus, Susan Capozzoli, Andres Cruz, Eugene David, Patrick Grattan, Christopher Kennedy, Martin Kulman, Felipe Pazos, and Alberto Roque (collectively, "Plaintiffs" or "Class Representatives"), on behalf of themselves and all others similarly situated, respectfully submit this Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Proposed Class and Collective Action Settlement (the "Settlement").

The Settlement resolves all claims asserted by Plaintiffs against Defendant RBC Capital Markets, LLC ("RBC" or "Defendant") for overtime and minimum wage violations under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), violations of certain provisions of the Employee Retirement Income Security Act of 1974 as amended ("ERISA") and violations of various state labor laws,[2] and represents the conclusion of over four years of rigorously contested litigation.  If approved, and in exchange for the release of claims described herein and other terms and conditions of the Stipulation, the Settlement will provide an excellent and significant benefit to Participating Claimants in the form of a cash payment derived from the gross

---

[1]    Plaintiffs incorporate herein by reference their Joint Stipulation and Settlement Agreement ("Stipulation") attached to the Declaration of Peter A. Muhic in Support of Unopposed Motion for Preliminary Approval of Proposed Class and Collective Action Settlement ("Muhic Declaration") as Exhibit A.  Unless otherwise defined herein, all capitalized terms used throughout share the meaning ascribed to them in the Stipulation.

[2]    The state labor laws at issue in this action include the California Labor Code, Industrial Welfare Commission Wage Orders, California Business and Professions Code, New York Labor Law, New York State Department of Labor's Codes, Rules and Regulations, Article X, Section 24 of the Florida Constitution and the Florida Minimum Wage Act.

Settlement Consideration of Five Million, Fifty Thousand Dollars and No Cents ($5,050,000.00). Such a compromise is inherently fair, reasonable and adequate under the governing standards for evaluating class action settlements in the Eighth Circuit given the litigation risks and challenges present in this case.

Certification, for settlement purposes only, of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and a collective action pursuant to 29 U.S.C. § 216(b) is clearly appropriate as set forth below.[3] In addition, the proposed plan for the dissemination of Class Notice to Members of the FLSA Settlement Class and Members of the Collective Opt-In Class satisfies the requirements of due process. The Class Notice will advise Class Members of, among other things, the terms of the Settlement, how to object to or opt-out of the Settlement, and the date of the Fairness Hearing.

The Settlement was not reached until after comprehensive fact discovery had taken place, Defendant's Motions for Summary Judgment were fully briefed, argued and decided, and Plaintiffs' conditional collective certification and class certification motions had been filed, briefed, argued and decided. Each term and detail of the Settlement was the product of spirited and extensive arm's-length negotiations.

As explained herein, all prerequisites for preliminary approval of the Settlement, certification of a class and collective action for settlement purposes only, approval of the proposed plan of allocation of the Settlement Consideration, and approval of the

---

[3]    While Plaintiffs acknowledge that this Court previously denied their Motion for Class Certification pursuant to Fed. R. Civ. P. 23 on behalf of California, Florida and New York subclasses, that decision does not preclude certification of a class for settlement purposes only as set forth more fully in Section V *supra*.

proposed Class Notice plan have been met.  Preliminary approval of the Settlement and dissemination of Class Notice at this juncture is therefore warranted.  Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) certify, for settlement purposes only, all state law claims that were or that could have been asserted in the Litigation pursuant to FED. R. CIV. P. 23(a) and (b)(3), and conditionally certify all federal FLSA claims asserted in the Litigation pursuant to 29 U.S.C. § 216(b); (3) appoint, for settlement purposes only, Plaintiffs Carlos Alvarez, Ana Blumberg-Markus, Susan Capozzoli, Andres Cruz, Eugene David, Patrick Grattan, Christopher Kennedy, Martin Kulman, Felipe Pazos, and Alberto Roque as Class Representatives; (4) appoint, for settlement purposes only, the law firms of Kessler Topaz Meltzer & Check, LLP, Rose, Klein & Marias, LLP, Thierman Law Firm, Lovell Stewart Halebian LLP, Berman DeValerio, and Head Seifert & Vander Weide as Class Counsel; (5) approve AB Data, Ltd. as the Claims Administrator; (6) preliminarily approve the allocation of the Settlement Consideration presented herein and incorporated in the proposed Class Notice; (7) approve and authorize the mailing of the Class Notice; and (8) set a date for a Fairness Hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Description of the Litigation

Prior to filing the initial complaint in this Litigation, Class Counsel conducted a thorough investigation into Plaintiffs' claims and allegations.  The pre-suit efforts of Class Counsel included: (i) extensive interviews and meetings with some of the Class Members; (ii) a review of documents produced by these individuals; and (iii) a review of

publicly-available materials regarding Defendant's Securities Brokers[4].  Subsequently, the Litigation was commenced against RBC on July 24, 2006 in the United States District Court for the District of Minnesota by two former RBC Securities Brokers[5] seeking to recover unpaid overtime, both individually and on behalf of all other similarly situated persons, pursuant to the FLSA, along with other state law claims (District of Minnesota Case No. 06-3093).

On July 27, 2006, California Plaintiff Eugene David filed a lawsuit against RBC in the Superior Court of California, County of Los Angeles, alleging FLSA overtime claims, as well as California claims for overtime, illegal deductions from pay, waiting time penalties, and failure to provide lawful rest and meal breaks (Los Angeles County Superior Court Case No. BC356065).  Plaintiff David (and each of the California Plaintiffs who filed after him) sought to bring California claims on behalf of a class of all Securities Brokers and those employed in "similar" positions in California.  On October 30, 2006, the Central District of California granted RBC's motion to transfer venue to the District of Minnesota.

On October 19, 2006, California Plaintiff Christopher Kennedy, and an individual who is no longer a party to the Litigation, filed a lawsuit against RBC in the Superior Court of California, County of Los Angeles, alleging the same California claims as Plaintiff David (Los Angeles County Superior Court Case No. BC360586).  On January

---

[4]     The term "Securities Brokers" includes all persons employed by RBC as Financial Consultants, Senior Financial Associates, Institutional Salespersons and/or Junior Institutional Salespersons in the United States during the Class Period.

[5]     These two individuals are no longer parties to the Litigation.

22, 2007, the Central District of California granted RBC's motion to transfer venue to the District of Minnesota.

On March 9, 2007, Plaintiff David amended his complaint to add California Plaintiff Ana Blumberg-Markus.  That same day, California Plaintiff Martin Kulman, along with another individual who is no longer a party to the Litigation, filed an amended complaint, substituting themselves as named plaintiffs in place of the two individuals who had originally filed the case.

On May 11, 2007, Magistrate Judge Franklin L. Noel issued Amended Pretrial Order No. 1 granting Plaintiff Kulman's motion to consolidate each of the above-described cases and ordering that the consolidated cases and any action asserting the same claims then pending or thereafter filed in or transferred to this Court be consolidated and referred to collectively as *In Re RBC Dain Rauscher Overtime Litigation* (District of Minnesota Case No. 06-03093 JRT-FLN).  *See* ECF No. 42.  On May 24, 2007, pursuant to Magistrate Judge Noel's Amended Pretrial Order No. 1, Plaintiffs David, Kennedy, Kulman and Blumberg-Markus filed a consolidated amended complaint in the District of Minnesota (ECF No. 43).

On December 12, 2007, New York Plaintiff Susan Capozzoli filed a complaint against RBC in the United States District Court for the Southern District of New York, alleging FLSA overtime claims, as well as claims under New York law for overtime, illegal deductions from pay, and other common law claims (Southern District of New York Case No. 07-11200) (the "New York action").  Plaintiff Capozzoli sought to bring her New York claims on behalf of a class of all Securities Brokers and those employed in

"similar" positions in New York.   Pursuant to the parties' stipulation, the Southern District of New York transferred the case to the District of Minnesota on March 24, 2008.

On March 6, 2008, Florida Plaintiffs Patrick Grattan, Felipe Pazos, Alberto Roque, Andres Cruz and Carlos Alvarez filed a complaint against RBC in the United States District Court for the Southern District of Florida, alleging FLSA overtime claims, as well as a claim for failure to pay minimum wage under Florida law (Southern District of Florida Case No. 08-20588) (the "Florida action").   The Florida Plaintiffs sought to bring their Florida claims on behalf of a class of all Securities Brokers and those employed in "similar" positions in Florida.   Pursuant to the parties' stipulation, the Southern District of Florida transferred the case of the District of Minnesota on April 7, 2008.

On July 23, 2008, pursuant to Magistrate Judge Noel's Pretrial Order No. 2, the New York action and the Florida action were also consolidated before Judge John R. Tunheim as part of *In Re RBC Dain Rauscher Overtime Litigation* (District of Minnesota Case No. 06-03093 JRT-FLN).   Pursuant to the consolidation order, Plaintiffs filed a second consolidated amended complaint on August 6, 2008.   *See* ECF No. 77.   The complaint alleges fifteen causes of action for failure to pay overtime (Count 1) and minimum wage (Count 2) in violation of the FLSA, failure to pay overtime (Count 3) and minimum wage (Count 4) in violation of California law, illegal deductions from employees' wages in violation of California law (Count 5), failure to reimburse employees for necessary expenditures incurred in direct consequence of work duties in violation of California law (Count 6), failure to comply with deadlines for payment of wages in violation of California law (Count 7), failure to pay employees within the

proper pay period by paying employees only once per month in violation of California law (Count 8), failure to provide rest and meal breaks in violation of California law (Count 9), failure to provide accurate and detailed records of hours worked and wages earned in violation of California law (Count 10), violations of California's unfair competition law resulting from RBC's violations of the California Labor Code (Count 11), failure to pay overtime in violation of New York law (Count 12), illegal deductions from employees' wages in violation of New York law (Count 13), failure to pay minimum wage in violation of Florida law (Count 14) and causing employees to forfeit all income within an ERISA deferred compensation plan upon termination of employment in violation of ERISA and California law (Count 15).

This Litigation has been protracted and vigorously litigated.  On October 6, 2008, following transfer, consolidation, and the filing of the second consolidated amended complaint, RBC filed an answer and a motion for judgment on the pleadings on the fifteenth cause of action.  *See* ECF Nos. 85-86.  On May 13, 2009, the Court denied RBC's motion, concluding that, for purposes of the motion, Plaintiffs' allegations identified defendants who allegedly qualified as ERISA fiduciaries with respect to the disputed plan.  The Court also found that the complaint adequately pled a claim that was not barred by ERISA's exhaustion requirement.  *See* ECF No. 109.

On June 26, 2009 and July 14, 2009, following extensive discovery practice, RBC filed motions for summary judgment on the claims of the ten individual named plaintiffs.  *See* ECF Nos. 114, 119, 124, 129, 133, 139, 150, 155, 160, and 183.  On July 7, 2009, Plaintiffs filed a motion to conditionally certify a collective action and to facilitate notice

to potential plaintiffs pursuant to 29 U.S.C. § 216(b).  *See* ECF No. 171.  On July 31,

2009, Plaintiffs filed a motion pursuant to FED. R. CIV. P. 23 for certification of a

California class, a New York class, a Florida class, and an ERISA class.  *See* ECF No.

201.

After full briefing and oral argument, on March 31, 2010, the Court denied the

Class Representatives' Motion for Class Certification under FED. R. CIV. P. 23, granted

the Class Representatives' Motion for Conditional Certification of a Collective Action,

granted RBC's Motion for Summary Judgment as to all claims brought by Florida

Plaintiffs Grattan, Pazos, and Roque, and granted in part and denied in part RBC's

Motions for Summary Judgment as to the claims brought by each of the other Class

Representatives.  *See* ECF No. 290.

On June 1, 2010, a notice in a form approved by the Court was sent to all similarly

situated individuals, pursuant to the Court's Order of March 31, 2010.  Four hundred and

twenty-three (423) of these individuals filed consent forms to participate in this

Litigation.

Despite their strongly-held differences in opinion regarding the merits of this case,

the parties worked together in a genuine effort to reach a mutually satisfactory settlement

of Plaintiffs' claims, and after multiple mediation sessions, were able to come to an

agreement on terms described below.

## B.    Settlement Negotiations

Prior to reaching the Settlement in this action, the parties had attempted on various

occasions throughout the proceedings to resolve Plaintiffs' claims.  The first such attempt

at a resolution took place during a two-day mediation session in October, 2007 before Mark A. Buckstein, Esq.   Despite making substantial progress at the mediation, the parties were ultimately unable to come to an agreement.

Subsequent to the initial mediation, the parties continued to engage in discovery practice and had several discussions regarding whether a second mediation would be appropriate.   In March, 2008, the parties agreed to participate in a second mediation on April 28, 2008.   Consequently, on March 24, 2008, the parties filed a Joint Stipulation to Stay the Litigation until May 3, 2008 pending the outcome of the second mediation.   *See* ECF No. 48.   The parties agreed to submit a report to the Court upon termination of the stay regarding whether the second mediation was successful.   The Stipulation was approved on March 25, 2008 (ECF No. 49), and the action was stayed.

Upon termination of the stay, on May 5, 2008, the parties filed a Joint Status Report with the Court.   *See* ECF No. 69.   The parties informed the Court that the mediation session scheduled for April 28, 2008 had been cancelled due to a motion that had been filed by counsel in the New York action and counsel in the Florida action on April 21, 2008 contesting Plaintiffs' leadership structure (ECF No. 56).   The parties noted that upon the Court's decision on the leadership motion, they would submit another status report.

On July 3, 2008, the parties filed a second Joint Status Report informing the Court that they had conferred and rescheduled the April 28, 2008 second mediation session for July 16, 2008.   *See* ECF No. 74.   The parties stated therein that they would submit a joint status letter to the Court by July 25, 2008 apprising the Court of the results of the second

mediation.

Prior to the second mediation, Plaintiffs retained a damages expert to develop various damages analyses, and those analyses were utilized during the second mediation session before Mr. Buckstein on July 16, 2008. The parties were unable to arrive at an amicable resolution of this matter during the second mediation and, on November 4, 2008, after the filing of the second consolidated amended complaint on August 6, 2008, the action was placed back on a litigation track and a revised pretrial scheduling order was entered. *See* ECF No. 93.

After completing substantial discovery and motion practice over the course of the next two years, the parties agreed to participate in a third mediation session on December 6, 2010 before Michael E. Dickstein, Esq. Prior to the mediation, the parties engaged in an extensive exchange of information and submitted comprehensive briefs to Mr. Dickstein outlining their positions. Given the voluminous discovery and recent rulings by the Court, the parties were aware of the strengths and weaknesses of, and the facts relevant to, their respective legal positions and arguments. On December 6, 2010, Mr. Dickstein convened an all-day in-person mediation session between the parties. During the mediation, there was an extensive exchange of information and analyses between the parties regarding their respective settlement positions, including information regarding the number of putative class members and damages. The parties reached an agreement to settle the action during the mediation session on the terms set forth in the parties' Joint Stipulation and Settlement Agreement attached to the Muhic Declaration as Exhibit A.

Although Defendant denies any allegations of wrongdoing and liability, and has

10

asserted numerous defenses to both liability and collective and class certification, it nevertheless desires to settle all claims that are asserted in this case in order to avoid the burden, expense, and uncertainty of continued litigation.

## III.  TERMS OF THE PROPOSED SETTLEMENT

As indicated above, the terms of the proposed Settlement are set forth in the Stipulation.  There are no undisclosed side agreements between Plaintiffs and Defendant. The essential terms of the Settlement are as follows:

(i)  Subject to Court approval, the Settling Parties stipulate, for settlement purposes only, to class certification of all state law claims that were or that could have been asserted in the Litigation, and to conditional collective certification of all federal FLSA claims asserted in the Litigation.

*See* Exhibit A ¶ 2.1.1.

(ii)  Also subject to Court approval, the Settling Parties stipulate, for settlement purposes only, that: (1) Plaintiffs Carlos Alvarez, Ana Blumberg-Markus, Susan Capozzoli, Andres Cruz, Eugene David, Patrick Grattan, Christopher Kennedy, Martin Kulman, Felipe Pazos, and Alberto Roque will serve as Class Representatives; (2) the law firms of Kessler Topaz Meltzer & Check, LLP, Rose, Klein & Marias, LLP, Thierman Law Firm, Lovell Stewart Halebian LLP, Berman DeValerio, and Head Seifert & Vander Weide shall be appointed as Class Counsel; and (3) AB Data, Ltd. will serve as the Claims Administrator.

*See* Exhibit A ¶¶ 1.4, 1.7, 1.11.

(iii)  The Class includes all Securities Brokers who worked for RBC in the United States at any time between June 1, 2007 and July 1, 2010 ("Class Period") and includes the Collective Opt-In Class and the FLSA Settlement Class:

(a)  The Collective Opt-In Class includes all Class Members who have filed consent forms to participate in the Litigation as of October 19, 2010 and who have not otherwise withdrawn their consent forms or submitted an Election to Opt-Out of Settlement and Class Action Form.

11

(b)     The FLSA Settlement Class includes all Class Members who have not previously filed a consent form with the Court to participate in this Litigation and who are not members of the Collective Opt-In Class.

See Exhibit A ¶¶ 1.14, 1.24, 1.42.

(iv)    RBC agrees to pay Settlement Consideration in the gross amount of $5,050,000.000, which is non-reversionary[6], to settle the wage and hour claims in this case, while continuing to deny liability.

See Exhibit A ¶¶ 1.41, 2.2.1.

(v)     Within twenty-one (21) days after the Court enters its Preliminary Approval Order, the Claims Administrator will mail to each Member of the Collective Opt-In Class: (1) a Collective Opt-In Class Notice; (2) an Election to Opt Out of Settlement and Class Action Form; and (3) a Change of Name and/or Address Information Form.  The Claims Administrator will mail to each Member of the FLSA Settlement Class: (1) an FLSA Settlement Class Notice; (2) a Claim and Consent to Join Settlement Form; (3) an Election to Opt Out of Settlement and Class Action Form; and (4) a Change of Name and/or Address Information Form.   The deadline to respond to the Class Notice shall be ninety (90) days after the Claims Administrator mails Class Notice to Class Members.

See Exhibit A ¶¶ 1.31, 1.32, 2.7.7.

(vi)    If a fully completed and properly executed Opt Out form is not received by the Claims Administrator from a Class Member and postmarked on or before the Notice Response Deadline, then that Class Member will be deemed to have forever waived his or her right to opt out of the Settlement Class and will be deemed to be a Member of the Settlement Class.  As a Member of the Settlement Class, that Class Member will become bound by the Released State Law Claims (defined in Section 1.38 of the Stipulation) portion of the Judgment if the Effective Date occurs.

---

[6]     Any portion of the Net Settlement Amount that is not distributed to Class Members because those Class Members submitted Opt-Outs or did not file timely and complete Claim and Consent to Join Settlement Forms shall not revert to RBC, but instead shall be reapportioned for distribution among the Participating Claimants.  See Exhibit A ¶ 2.2.4.

Class Members who do timely submit fully completed and properly executed Opt Out forms shall have no further role in the Litigation, and for all purposes shall be regarded as if they never were either a party to this Litigation or a Class Member, and thus they shall not be entitled to any benefit as a result of the Litigation, the Stipulation and the Settlement, nor will they have released any claims they may have against RBC.

*See* Exhibit A ¶¶ 1.42, 2.8.2.

(vii)   Class Members who do not opt out of the Settlement Class may object to the Stipulation by submitting written objections to the Court and mailing copies to Class Counsel, counsel for Defendant, and the Claims Administrator, postmarked by the Notice Response Deadline.

*See* Exhibit A ¶ 2.8.3.

(viii)  Class Members who do not opt out of the Settlement Class may also elect to become Participating Claimants and become bound by the Released Federal Law Claims (defined in Section 1.39 of the Stipulation) portion of the Judgment if the Effective Date occurs. Members of the Collective Opt-In Class who do not properly opt out of the Settlement will automatically become Participating Claimants. Members of the FLSA Settlement Class who wish to exercise this option must fully and timely complete, execute and mail the Claim and Consent to Join Settlement Form to the Claims Administrator postmarked on or before the Notice Response Deadline. If a completed and properly executed Claim and Consent to Join Settlement Form is not received by the Claims Administrator from an FLSA Settlement Class Member, then that Class Member will be deemed to have forever waived his or her right to be a Participating Claimant and receive payment under the Settlement. However, as long as they do not properly submit Opt Outs, Class Members shall be deemed Members of the Settlement Class and shall be subject to the Judgment even if they do not submit a Claim and Consent to Join Settlement Form. Those, however, who did not opt-in to the Litigation (and, thus, are not Members of the Collective Opt-In Class) and did not submit an Opt Out form will not be deemed to have waived any FLSA claims they may have against Defendant.

*See* Exhibit A ¶¶ 1.34, 2.8.4.

(ix)   The Settlement Consideration will be used to pay the timely and valid claims of Participating Claimants, including Collective Opt-In Class Participation Payments, the attorneys' fees and litigation costs of Class

Counsel, as approved by the Court, the individual Class Representative
Enhancements, as approved by the Court, the agreed upon fees and costs of
the Claims Administrator, as approved by the Court, and any other
Administrative Costs in connection with the implementation of the
Stipulation.  The Settlement Consideration less Class Counsel's attorneys'
fees and litigation costs, the Class Representative Enhancements, and
Administrative Costs is referred to as the "Net Settlement Amount" and is
available for distribution to Participating Claimants.

*See* Exhibit A ¶¶ 1.30, 2.2.1, 2.2.2.

(x)     The Settlement Consideration will not be used to pay RBC's share of
        payroll, state and federal taxes.

        *See* Exhibit A ¶¶ 1.41.

(xi)    Any portion of Class Counsel's fees and costs or the Class Representative
        Enhancements that is not approved or awarded by the Court shall be
        included in the Net Settlement Amount and shall be distributed to
        Participating Claimants.

        *See* Exhibit A ¶ 2.2.3.

(xii)   Each Participating Claimant will receive a payment determined pursuant to
        the Allocation Formula developed by Class Counsel:

        (a)     For each Member of the FLSA Settlement Class, the Allocation
                Formula will take into account the calendar months that the FLSA
                Settlement Class Member was actively employed as a Securities
                Broker for more than fifteen (15) calendar days within the Class
                Period ("Compensable Work Month").  The Allocation Formula
                factors in the months in which an FLSA Settlement Class Member's
                monthly pro-rated compensation was in excess of One Hundred
                Thousand Dollars ($100,000) for a calendar year.    Each
                Compensable Work Month shall be given a multiplier of 1.
                However, a multiplier of 3 shall be given for those Work Months in
                which an FLSA Settlement Class Member's annualized income is
                less than $100,000.  Members of the FLSA Settlement Class may
                elect to participate in the Settlement by timely completing and
                submitting a Claim and Consent to Join Settlement Form, and will
                thereafter be referred to as a "Participating Claimant."   Each
                Participating Claimant shall receive a pro-rata distribution of the Net
                Settlement Amount based upon the sum of their Adjusted

14

Compensable Work Months divided by the sum of all Adjusted Compensable Work Months of the Participating Claimants.

(b)     For each Member of the Collective Opt-In Settlement Class, the Allocation Formula will take into account the calendar months that the Collective Opt-In Class Member was actively employed as a Securities Broker for more than fifteen (15) calendar days within the Class Period ("Compensable Work Month"). The Allocation Formula factors in the months in which a Collective Opt-In Class Member's monthly pro-rated compensation was in excess of One Hundred Thousand Dollars ($100,000) for a calendar year. Each Compensable Work Month shall be given a multiplier of 1. However, a multiplier of 3 shall be given for those Work Months in which a Collective Opt-In Class Member's annualized income is less than $100,000. Unless a Collective Opt-In Class Member submits an Election to Opt Out of Settlement and Class Action Form, that Collective Opt-In Class Member shall receive a pro-rata distribution of the Net Settlement Amount based upon the sum of their Adjusted Compensable Work Months divided by the sum of all Adjusted Compensable Work Months of the Participating Claimants.

In addition to their pro-rata distribution of the Net Settlement Amount, Members of the Collective Opt-In Class shall receive a Collective Opt-In Class Participation Payment in the amount of $1,000 in recognition of their efforts to join the Litigation prior to the Settling Parties reaching the Settlement.

To receive a payment under this Settlement, Members of the Collective Opt-In Class need not do anything because they have already affirmatively joined this case by submitting their signed consent forms. By doing nothing, Members of the Collective Opt-In Class, including the Class Representatives, will be considered Participating Claimants for purposes of allocation of the Net Settlement Amount and will receive their pro-rata distribution like Members of the FLSA Settlement Class who submit timely and valid Claim and Consent to Join Settlement Forms.

See Exhibit A ¶ 2.3.1-2.3.4, 2.8.2, 2.8.4.

(xiii) The Class Period for purposes of calculating the Compensable Work Months for the Class Representatives shall mean the period beginning three years prior to the date when the Class Representative filed his or her complaint through the date of termination of his or her employment with

RBC.

*See* Exhibit A ¶ 2.14.2.

(xiv)   Class Counsel will move the Court for an award of attorneys' fees of up to 33 1/3% of the Settlement Amount, along with litigation costs and expenses. In addition, Class Counsel will request that the Court award Class Representative Enhancements for the Class Representatives in an amount not to exceed $20,000 per Class Representative to compensate them for the time that they spent, the contributions that they made, and the risks that they undertook, in prosecuting the Litigation on behalf of the Settlement Class. Each Class Representative shall be required to sign the appropriate State-specific release in exchange for receiving a Class Representative Enhancement.

*See* Exhibit A ¶¶ 2.11.1, 2.11.4.

(xv)   Finally, the Settlement provides for a final Settlement Hearing regarding the fairness, adequacy, and reasonableness of the Settlement and Class Counsel's request for attorneys' fees, litigation costs and expenses, and Class Representative Enhancements. The Class Notice will advise Class Members of the Settlement Hearing and their right to object. At the Settlement Hearing, the Settling Parties will address any timely written objections from Class Members or any concerns raised by Class Members who attend the Settlement Hearing, as well as any timely stated concerns of any state officials who receives a notice under the Class Action Fairness Act ("CAFA"), if any, and any concerns of the Court, if any, and the Court will have a second opportunity to review the Settlement before deciding whether to grant final approval.

*See* Exhibit A ¶¶ 1.43, 2.6.4, 2.8.3.

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENT

### A.   The Proposed Settlement is Entitled to an Initial Presumption of Fairness

Plaintiffs present this Settlement to the Court for its review under FED. R. CIV. P. 23, which provides in pertinent part:

(e)   Settlement, Voluntary Dismissal, or Compromise

16

(1)  (A)  The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.

(B)  The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(C)  The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

Federal courts strongly favor the voluntary resolution of complex class actions. *See White v. NFL*, 836 F. Supp. 1458, 1476 (D. Minn. 1993) (citing *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980)); *see also* Newberg & Conte, Newberg on Class Actions §11.41 (3d ed. 1992). In class actions in particular, "there is an overriding public interest in favor of settlement." *In re Charter Commc'ns, Inc. Secs. Litig.*, No. 02-CV-1186, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990) (holding that the policy favoring settlement is so strong that such settlement agreements are "presumptively valid"). Furthermore, "there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel." *In re Charter Commc'ns Inc. Secs. Litig.*, 2005 WL 4045741, at *5 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)). The district court has discretion in evaluating a class action settlement, and its decision will not be overturned unless an abuse of discretion is shown. *See White*, 836 F. Supp. at 1476-77 (citing *Wiener v. Roth*, 791 F.2d 661, 662 (8th Cir.

17

1986)).

The Court has wide discretion in determining whether to approve a class action settlement; however, the United States Supreme Court has cautioned that in reviewing a proposed class action settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *accord In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D. N.Y. 2003).   Because the object of the settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits.  *See Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) ("the court need not undertake the type of detailed investigation that trying the case would involve.").  Instead, the Court's inquiry should be limited to the consideration of "whether the proposed settlement is fair, adequate, and reasonable."  *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 691 (D. Minn. 1994) (citing *Van Horn*, 840 F.2d at 606).  When experienced counsel have presented a settlement that has been negotiated at arm's-length in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.  *See In re Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp 456, 460 (D. Md. 1987); *Chatelain v. Prudential-Bache Secs., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).

18

The initial presumption of fairness and adequacy applies with special force here because the Settlement was reached by experienced, fully-informed counsel after protracted and intense arm's-length negotiations. *See In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009) ("The proposed settlement was forged in arm's length negotiations and aided by an experienced, independent mediator. Discovery has been extensive; the parties are fully informed of the merits of their claims. 'Where sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.'") (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)). "So long as the integrity of the arm's length negotiation process is preserved … a strong initial presumption of fairness attaches to the proposed settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997). *See also* Manual for Complex Litigation § 30.43 at 289 (3d ed. 2002); Newberg & Conte, Newberg on Class Actions § 11.42 (3d ed. 1992); 3B Moore's Federal Practice ¶ 23.1.24[2] (2d ed. 1992). In addition, because of the extensive discovery and motion practice that had taken place since the filing of this action, no question exists that Class Counsel was fully informed of the merits and weaknesses of the case by the time the Settlement was consummated. Thus, this Settlement is entitled to the initial presumption of fairness.

A hearing on a motion for preliminary approval is not a final fairness hearing. Rather, its purpose is to determine whether to notify class members of the proposed settlement and proceed with a fairness hearing. *See In re Traffic Exec. Ass'n.–E. R.Rs.*,

627 F.2d 631, 633 (2d Cir. 1980) (grant of preliminary approval is not "tantamount to a finding that the settlement is fair and reasonable.  It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness"); *Armstrong*, 616 F.2d at 314.

Plaintiffs submit that there are no grounds to doubt the fairness of this Settlement, and that it contains no deficiencies.  As set forth below, application of each of the relevant evaluative factors to the terms of the Stipulation demonstrates that the proposed Settlement is fair, reasonable and adequate, and is well within the range of "possible approval."  Moreover, the Court should bear in mind that, although Plaintiffs address herein the factors for final Settlement approval following dissemination of Class Notice, they are requesting only preliminary approval at this time.

**B.     The Eighth Circuit's Standards Governing Class Action Settlements**

The Eighth Circuit has ruled that "[i]n approving a class settlement, the district court must consider whether it is 'fair, reasonable, and adequate.'"  *Van Horn*, 840 F.2d at 606 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)).  In evaluating a proposed settlement, however, courts must "not decide the merits of the case or resolve unsettled legal questions."  *In re Charter Commc'ns Inc. Secs. Litig.,* 2005 WL 4045741, at *4 (citing *Carson,* 450 U.S. at 88 n.14).  In the Eighth Circuit, courts are required to focus on several factors to determine whether a proposed settlement is fair, reasonable and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and

20

expense of further litigation; and (4) the amount of opposition to the settlement.[7]  *See*

*Grunin*, 513 F.2d at 125 (citations omitted).

When analyzed under the facts of this case, all of these factors militate in favor of

preliminarily approving this Settlement.  Plaintiffs address these factors in turn.  Indeed,

in the experienced judgment of Class Counsel, there is serious doubt that a more

favorable result could be obtained if this case were litigated against Defendant through

trial and the inevitable post-trial motions and appeals.  As such, the Settlement clearly

satisfies the relevant factors, set forth above, thereby warranting this Court's preliminary

approval.

> 1.     **The Merits of Plaintiffs' Case When Weighed Against the Settlement Terms Favor Approval of the Proposed Settlement**
>
> a.      **The Merits of Plaintiffs' Case**

Prior to the Settling Parties reaching this Settlement, the Litigation had gone on for

over four (4) years and was diligently litigated by both sides.  In addition, much work has

been undertaken as far as document review, depositions, interviews and other fact-

gathering, damage analyses, legal research, and comparison of analogous cases.  If the

Settlement is not approved, additional litigation will be required.  A trial on the merits,

and preparing for the same, would entail considerable expenses to be incurred by both

sides.  Furthermore, the trial result would not necessarily end the Litigation, giving the

losing party the right to appeal.

---

[7]      At this point in the procedural process, Plaintiffs seek preliminary approval of the Settlement, including approval of the proposed Class Notices.  Plaintiffs respectfully submit, therefore, that this factor (level/content of objections, if any) is not critical at this preliminary stage, but will be addressed when they request final settlement approval.

In the instant matter, liability, damages and decertification of the conditionally certified FLSA class would clearly be hotly contested issues. Invariably, Defendant would assert that it had a very strong defense to the FLSA claims on the merits, based on its view that Plaintiffs were properly classified as exempt employees. Moreover, the issue of damages and conditional certification of the collective action alone would have invariably triggered a proverbial battle of the experts. This would have added additional risk that the collectively certified class could end up receiving no compensation (or a significantly reduced amount) for the losses they suffered, if the Court were to rule in favor of Defendant.

Prior to entering into the Settlement, Class Counsel considered the uncertain outcome and the risk of any litigation, especially in a complex action such as this one, as well as the difficulties and delays inherent in any such litigation. Class Counsel is also mindful of the inherent problems of proof (including the difficulty of establishing damages) and possible defenses available to Defendant. This Court's March 31, 2010 Order denying Plaintiffs' Motion for Class Certification pursuant to FED. R. CIV. P. 23 illustrates the rigorous burden faced by Plaintiffs and would likely have been relied upon by Defendant when challenging the collectively certified FLSA class at the decertification stage. Indeed, several wage and hour cases have recently lost at either the certification or summary judgment stage. *See, e.g.*, *Zivali v. AT & T Mobility, LLC*, No. 08 Civ. 10310, 2011 WL 1815391 (S.D.N.Y. May 12, 2011) (granting the defendant's motion for decertification of the class); *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050 (D. Minn. 2011) (granting the defendants' motion for decertification of an FLSA

class and motion for summary judgment as to the named plaintiffs); *White v. Baptist Mem'l Health Care Corp.*, No. 08–2478, 2011 WL 1883959 (W.D. Tenn. May 17, 2011) (finding decertification of an FLSA class is proper).

While Class Counsel believes strongly in the merits of Plaintiffs' claims, they nonetheless are cognizant of the developing body of adverse case law. *See id.* Consequently, this factor also favors preliminary approval of the Settlement.

### b.     The Terms of the Stipulation Favor Preliminary Approval

As discussed above, the proposed Settlement benefits Participating Claimants. The amount received from Defendant is a fair recovery. Determining a reasonable settlement amount is never simply a mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). This Settlement, though not providing a maximum value that might be awarded at trial at a later date, provides substantial monetary benefits now, without the time, difficulties and expense of further litigation and without the years of delay any appeal might cause. The Settlement thus ensures that Participating Claimants will receive significant monetary relief, and for practical purposes, means that those Class Members who actually assert their rights as either Collective Opt-In Class Members who do not exclude themselves from the Settlement by submitting an Election to Opt Out of Settlement and Class Action Form or FLSA Settlement Class Members who file valid and timely Claim and Consent to Join Settlement Forms will receive substantial compensation. Finally, the Settlement Amount is non-reversionary, which means that Defendant will pay the full Settlement Amount

regardless of the Class Member claim rate. Any amounts that would otherwise be reversionary will be distributed proportionally among the Participating Claimants, further enhancing their recovery.

### 2. Defendant's Financial Condition

Plaintiffs do not contend that Defendant could not withstand a larger judgment, but this is no obstacle to approving the Settlement. Countless settlements have been approved where a settling defendant has had the ability to pay greater amounts. *See, e.g., In re IBP, Inc. Secs. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004) ("Although IBP surely had and has the ability to pay more than $8 million, this does not make the settlement inadequate."); *In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002) ("Although it appears that the defendant bank has the ability to withstand a greater financial judgment, the Court finds that, given the substantial risks and obstacles faced by the classes in proceeding to trial as discussed herein, such factor does not weigh against approving the settlement."). "This is especially true where, as here, the other [settlement evaluation] factors weigh heavily in favor of settlement." *See, e.g., In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).

### 3. The Complexity and Further Expense of Continued Litigation Weighs in Favor of the Proposed Settlement

"The possible length and complexity of further litigation is a relevant consideration to the trial court in determining whether a class action settlement agreement should be affirmed." *In re Wireless Tel. Cost Recovery Fees Litig.*, No. 03-MD-015, 2004 WL 3671053, at *13 (W.D. Mo. Apr. 20, 2004). Here, the wage and hour claims

advanced by Plaintiffs involve numerous complex legal and factual issues, which would require many additional depositions and expert discovery and testimony, exponentially adding to the expense and duration of the litigation.  As noted above, Plaintiffs allege and therefore would be required to prove at trial that Defendant improperly and willfully classified Class Members as exempt under the FLSA.  The outcome of this litigation is far from certain.  When the Settling Parties agreed to resolve Plaintiffs' claims, Class Counsel believed that many aspects of this case were strong, but understood that there was a clear risk that some of the Named Plaintiffs' remaining claims, in addition to those that the Court dismissed at the summary judgment stage, could be dismissed prior to a trial or that the FLSA claims of the conditionally-certified class could be decertified by the Court as a collective action.  Even some of the stronger aspects of the case were subject to rejection by a jury.  Thus, as in any complex action, Plaintiffs generally faced numerous uncertainties.  It is not difficult to envision many months of additional costly and hotly contested fact and expert discovery, as well as dispositive motions and motions *in limine* and other pre-trial litigation.  Avoiding the delay and risk of protracted litigation is another reason why counsel frequently recommends, and the courts approve, settlements.  These factors, therefore, weigh heavily in favor of preliminary approval of the Settlement.  *See In Re Charter Commc'ns, Inc. Secs. Litig.*, 2005 WL 4045741, at *8 (court approved settlement where further litigation would take years and cost millions of dollars, which in turn would deplete insurance policy proceeds funding the cash portion of the settlement).

## V.    THE COURT SHOULD CERTIFY THE CLAIMS OF THE CLASS

The benefits of the proposed Settlement can be realized only through certification of a class action pursuant to FED. R. CIV. P. 23 and certification of a collective action pursuant to 29 U.S.C. § 216(b), consisting of:

> All Securities Brokers who worked for RBC in the United States at any time between June 1, 2007 and July 1, 2010 and includes the Collective Opt-In Class[8] and the FLSA Settlement Class[9].

The parties have stipulated, for settlement purposes only, to certification of all state law claims that were or that could have been asserted in the Litigation pursuant to FED. R. CIV. P. 23.[10]

---

[8]     The Collective Opt-In Class includes all individuals who have filed consent forms to participate in the Litigation as of October 19, 2010, and who have not otherwise withdrawn their consent forms, or submitted an Election to Opt-Out of Settlement and Class Action Form.

[9]     The FLSA Settlement Class includes all Class Members who have not previously filed a consent form with the Court to participate in this Litigation and who are not members of the Collective Opt-In Class.

[10]    Although the Court previously denied Plaintiffs' Motion for Class Certification of California, Florida, New York, and ERISA subclasses pursuant to FED. R. CIV. P. 23, its determinations as to why class certification was not warranted do not foreclose the certification of the Class for the purposes of settlement. *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) ("a class might be suitable for settlement but not for litigation. The class might be unmanageable if the case were actually tried yet manageable as a settlement class because the settlement might eliminate all the thorny issues that the court would have to resolve if the parties fought out the case.") (citation omitted). Further, the Court, in its March 31, 2010 Order, did not address each element of Rule 23(a) and (b)(3) as to each subclass and, in fact, determined that certain elements were satisfied for the California subclass. For example, after ruling on Defendant's motion for summary judgment as to the proposed New York class representative, the only remaining state law claim for the proposed New York subclass was a claim for failure to pay overtime in violation of New York law. The Court concluded that a New York subclass would not satisfy the predominance requirement in Rule 23(b)(3) due to

In addition, the parties have agreed, for settlement purposes only, to collective certification of all federal FLSA claims asserted in the Litigation. *See* Exhibit A ¶ 2.1.1.

The United States Supreme Court, federal Circuit Courts, and district courts, have recognized that the requirements for approving a settlement class are lower than those for a litigated class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 610 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* FED. R. CIV. P. 23(b)(3)(D), for the proposal is that there be no trial."); *Little Rock Sch. Dist.*, 921 F.2d at 1388 ("'Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public.'") (quoting *Armstrong*, 616 F.2d at 315); *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 158 (S.D. Ohio 1992) ("courts have recognized that '. . . the requirements of Rule 23 may be more easily satisfied in the settlement context than in the more complex litigation context.'") (collecting cases). Indeed, district courts have certified wage and hour classes for settlement purposes only even where class certification had previously been denied in the litigation context. *See, e.g.*, *Simel v. JP Morgan Chase & Co.*, No. 05-cv-9750 (S.D.N.Y. ECF No. 35) (January 5, 2011 Order and Final Judgment certifying a Rule 23

---

individual issues relating to eligibility for the various asserted exemptions, and that, solely because the proposed class representative had no remaining claims arising under New York law, typicality and adequacy were not met. The Court did not make any specific determination as to whether the remaining elements of Rule 23(a) and (b)(3) would have been satisfied. *See* ECF No. 290 at 114-115. In fact, the Court *did* find that the proposed California subclass satisfied Rule 23(a)'s numerosity, commonality, typicality, and, potentially, adequacy requirements. *Id*. at 115-117.

class action for settlement purposes only which class included individuals employed by the defendants in New Jersey despite the fact that, in one of the consolidated actions, the District of New Jersey had previously declined to certify a New Jersey class).[11]

To establish a Class for settlement purposes, the action must satisfy the four prerequisites of Rule 23(a).  Under Rule 23(a), "[a] plaintiff seeking to certify a class must initially establish that: (1) the class is so numerous that joinder of all the members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  *Nadeau v. Wells Fargo Bank, Nat'l Ass'n*, No. 10-CV-4356, 2011 WL 1633131, at *2 (D. Minn. Apr. 26, 2011).  In addition, plaintiffs in class action settlements must satisfy the requirements of one or more of the three subsections of Rule 23(b).  *See id.*

FLSA class claims similarly can be certified for settlement purposes.  *See Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) (The standard for approving a proposed settlement of FLSA claims "is similar to that used in evaluating settlements under Rule 23(e)") (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)).  Courts have routinely granted similar requests for certification to facilitate nationwide wage and hour settlements involving stockbrokers.  *See, e.g., Glass v. UBS Fin. Servs., Inc.*, No. 06-4068, Slip Op. (N.D. Cal. Aug. 25, 2006) (Order Granting Preliminary

---

[11]    *Cf In re Diebold ERISA Litig.*, No. 06-cv-170 (N.D. Ohio ECF No. 98) (August 25, 2010 Order preliminarily certifying a Rule 23 ERISA class action for settlement purposes only following the denial of the plaintiffs' motion for class certification).

Approval of Settlement and Setting Final Approval Hearing); *Steinberg v. Morgan Stanley & Co.,* No. 06-2628, Slip. Op. (S.D. Cal. Jan. 8, 2008) (Order Granting Preliminary Approval of Class and Collective Action Settlement); *Janney Montgomery Scott LLC Fin. Consultant Litig.,* No. 06-cv-3202, Slip Op. (E.D. Pa. Feb. 9, 2009) (Order Granting Preliminary Approval of Class and Collective Action Settlement).

**A.    The Class May Be Properly Certified Under Rule 23(a) for Settlement Purposes Only**

**1.    Rule 23(a)(1) – "Numerosity"**

The Class is sufficiently numerous.  In order to demonstrate numerosity, Plaintiffs must show that joinder is 'impracticable,' not that it is 'impossible.'" *In re WorldCom, Inc. Secs. Litig.*, 219 F.R.D. 267, 279 (S.D.N.Y. 2003) (*citing Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 451 (finding the numerosity standard had been met in a directly analogous ERISA breach of fiduciary duty case).  In *Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982), the Eighth Circuit cited with approval cases certifying classes of sixteen and eighteen members on grounds, in part, that joinder was impracticable.  *Id.* at 561 (citing *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (eighteen class members)); *Crenshaw v. Maloney*, 13 Fair Emp't Practice Cases (BNA) 154, 155 (D. Conn. May 6, 1976) (sixteen class members)).  In *Arkansas Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971), the Eighth Circuit held that a class of twenty was sufficient to satisfy the numerosity requirement.  "Indeed, numerosity is presumed at a level of 40 members." *Consol. Rail. Corp. v. Town of Hyde Park*, 47 F.3d

473, 483 (2d Cir. 1995) (*citing* 1 Herbert Newberg & Albert Conte, *Newberg on Class Actions* § 3:05 (2d ed. 1985)).  Here, numerosity is readily satisfied as the Class includes more than 3,200 Securities Brokers.

### 2.    Rule 23(a)(2) – "Commonality"

The threshold commonality inquiry is whether there are any questions of fact or law that are common to the class.   *See* FED. R. CIV. P. 23(a)(2).   Rule 23(a)(2) commonality requires that the claims of the plaintiff and class members "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).   A common nucleus of operative facts is usually sufficient to satisfy the commonality requirement. *See Nadeau*, 2011 WL 1633131, at *3; *see also, In re Zurn Pex Plumbing Prods. Liability Litig.*, 267 F.R.D. 549, 559 (D. Minn. 2010); *Marisol A.  v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share *a* common question of law or fact) (emphasis added); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987).  Courts in this District have analyzed commonality in the following manner:

> All such questions need not be common to every member of the class. *See Paxton v. Union National Bank*, 688 F.2d 552, 561 (8th Cir. 1982); . . . 23(a)(2) may be satisfied where the course of conduct leading to a cause of action affects all class members and at least one of the elements for that cause of action is shared by the class members. *See Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993)(finding commonality despite the fact that four different pension plans were involved); *Lockwood*, 163 F.R.D. at 575 (citing Newberg, Class Actions § 3.10 at 3-50) . . . Commonality

30

> exists if "the question of law linking the class members is
> substantially related to the resolution of the litigation even though
> the individuals are not identically situated." *Paxton*, 688 F.2d at 561
> (citation omitted); *see also Coley*, 635 F.2d at 1378.

*Smith v. United Healthcare Servs*., No. 00-CV-1163, 2002 WL 192565, at *3 (D. Minn.

Feb. 5, 2002).

This action satisfies the commonality requirement. Here, numerous common questions exist with respect to each Class Member, and include, *inter alia*, the following:

1. Whether RBC had a policy of improperly classifying Class Members as exempt employees for purposes of federal and state wage laws;

2. If RBC improperly classified Class Members as exempt, whether this was done knowingly or recklessly;

3. Whether RBC required Class Members to perform their duties in a similar manner; and

4. Whether RBC's policies and conduct in classifying the Class Members as exempt violated the FLSA, state wage laws, and/or ERISA.

Here, the overarching question of law and fact applicable to all Class Members is whether the payment of wages to Defendant's Securities Brokers violated applicable wage and hour laws. This "shared legal issue" is sufficient to support certification under Rule 23(a)(2) in the context of settlement. As noted by the Court in its March 31, 2010 Order, commonality was satisfied with respect to the California subclass because, *inter alia*, "[a]ll members of the putative class worked for the same employer in the same state under the same set of California wage and hour laws." ECF No. 290 at 115-116.

### 3.    Rule 23(a)(3) – "Typicality"

Typicality exists where the "claims of the representative plaintiffs arise from the

31

same course of conduct that gives rise to claims of other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. at 452 (quoting *In re Oxford Health Plans, Inc., Secs. Litig.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000)); *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1032 (D. Minn. 2007) ("typicality prerequisite is satisfied 'when the claims of the named plaintiffs arise from the same event or are based on the same legal theory as the claims of the class members.'") (citations omitted); *Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims").

In the  Eighth Circuit, "the 'burden of demonstrating typicality is fairly and easily met so long as other class members have claims similar to the named plaintiff . . . [and] this typicality is not altered by the different mortgage instruments held by class members. The relief sought in the action is the same regardless of the amount of overage in any particular account.'" *Farthing v. United Healthcare of the Midwest, Inc*., No. 98-cv-4, 2000 U.S. Dist. LEXIS 21995, at *11-12 (W.D. Mo. 2000) (quoting *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171 (8th Cir. 1995).

Here, Plaintiffs' claims are typical of those of the Class.  Each Class Member was an employee of RBC, was classified as exempt from applicable wage and hour laws, and was allegedly denied overtime compensation as a result thereof.  For example, as

determined by the Court in its March 31, 2010 Order, Plaintiff "Kennedy's claims under the California overtime and minimum wage statutes … raise the critical issue of whether Kennedy and others engaging in similar work duties qualify for the administrative exemption."  ECF No. 290 at 116.  Accordingly, Plaintiffs' claims are typical of the claims of the Class within the meaning of Rule 23(a)(3) for purposes of settlement.

### 4.      Rule 23(a)(4) – "Adequacy of Representation"

 The adequacy of representation requirement is met when the representative parties fairly and adequately protect the interests of the class.  *See* FED. R. CIV. P. 23(a)(4).  In making this determination, the Court should consider (1) whether the representatives and their attorneys are able and willing to prosecute the action competently and vigorously and (2) whether each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.  *See Mathers v. Northshore Mining Co*., 217 F.R.D. 474 (D. Minn. 2003).  Plaintiffs' attorneys are qualified, experienced, and able to conduct the Litigation on behalf of the Class.  *See* Muhic Declaration ¶¶ 4-9 and Exhibit B attached thereto (firm resume of Kessler Topaz Meltzer & Check, LLP).  Furthermore, Plaintiffs contend that they have no interests that are adverse to those of the other Class Members.

### B.      The Class May Be Properly Certified Under Rule 23(b) for Settlement Purposes Only

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b).  While only one of the conditions of Rule 23(b) must be satisfied in order to merit class certification, if the

requirements of more than one of the alternatives are met, then the court may certify the action under each that is satisfied. *See, e.g., Babcock v Computer Assocs. Int'l, Inc.,* 212 F.R.D. 126, 133 (E.D.N.Y. 2003). In addition to meeting all of the requirements of Rule 23(a), the Class also meets the requirements of subsection of Rule 23(b)(3) for settlement purposes only.

Under Rule 23(b)(3), a class should be certified when common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods*, 521 U.S. at 594. Superiority requires the court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (internal quotations omitted).

In the case at bar, the relevant factual circumstances of each Class Member are the same. In addition, the relief sought is the same for every Class Member. Likewise, the legal theories of each Class Member are identical. "Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common issues present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001), *cert. denied,* 534 U.S. 973 (2001). "[T]he fundamental question is whether the

34

group aspiring to class status is seeking to remedy a common legal grievance."
*Lockwood Motors, Inc. v. Gen. Motors Corp.,* 162 F.R.D. 569, 580 (D. Minn. 1995).

Where, as here, the necessary proof consists almost exclusively of an evaluation of defendant's actions and inactions, the "predominance requirement" is easily satisfied. *See, e.g., In re Prudential,* 148 F.3d at 314 (affirming lower court's finding of predominance where plaintiff alleged defendant engaged in "common scheme" or uniform practice). Accordingly, in the instant matter, common issues predominate, because the Class Members seek to remedy "common legal grievances"—namely, the allegedly improper classification of Securities Brokers as exempt and RBC's failure to pay overtime compensation. Plaintiffs contend that each of these common questions may be resolved on a classwide basis through common proof.[12]

Further, the superiority inquiry under Rule 23(b)(3) involves a comparative evaluation of "other methods of litigating the case." *Robin Drug Co. v. PharmaCare Mgmt. Servs., Inc.,* No. 03-cv-3397, 2004 WL 1088330, at *4 (D. Minn. May 13, 2004). In the case of overtime claims, the Ninth Circuit has held that, in appropriate circumstances, a single class action is preferable to a multitude of individual lawsuits, since "[n]umerous individual actions would be expensive and time consuming and would create a danger of conflicting decisions as to persons similarly situated." *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512-13 (9th Cir. 1978).

---

[12]     Although the Court determined in its March 31, 2010 Order that predominance was not satisfied because "painstaking and fact-intensive" inquiries would need to be made with respect to each individual plaintiff's day-to-day work duties and whether he or she qualifies for the exemptions, ECF No. 290 at 117, the settlement process is intended to alleviate such manageability concerns. *See Amchem Prods., Inc.*, 521 U.S. at 610.

35

CASE 0:06-cv-03093-JRT-FLN   Document 346   Filed 08/16/11   Page 45 of 53

In this case, requiring thousands of RBC Securities Brokers to file individual lawsuits would needlessly waste judicial resources in the event of litigation, since Plaintiffs contend that each lawsuit would likely involve the same evidence regarding RBC's policies and procedures, its pay practices, and the duties and responsibilities of its Securities Brokers.  Thus, Plaintiffs believe that the most efficient way of resolving these claims is through a single class action, such as the present action, before a single fact finder.

### C.    The Class Satisfies the Requirements of 29 U.S.C. § 216(b)

This case is also appropriate for collective action certification under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), for settlement purposes only.   Indeed, this Court previously determined that Plaintiffs are similarly situated to other Class Members when it granted their motion for conditional certification of a collective action under the FLSA on March 31, 2010.  *See* ECF No. 290.  Under the FLSA, an action may be maintained by an employee or employees on behalf of others who are "similarly situated."  29 U.S.C. § 216(b).  Courts follow a two-phased approach for determining whether an FLSA action meets the "similarly situated" standard.  *See, e.g., Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) (quoting 29 U.S.C. § 216(b)).   In the initial, "conditional" certification phase, the "similarly situated" standard is more permissive than Rule 23 and requires only that the named plaintiff make a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).

36

Here, Plaintiffs and Class Members all worked in similar positions, performed common duties, and shared common job descriptions. Plaintiffs allege that RBC has a common practice of misclassifying Class Members as exempt from overtime pay requirements and refusing to provide compensation for overtime hours worked. Accordingly, Plaintiffs contend, and RBC does not dispute for purposes of settlement only, that collective action certification of the Class under 29 U.S.C. § 216(b) is appropriate.

## VI.    THE PROPOSED NOTICE PLAN

To satisfy due process, notice to Class Members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The form of notice must be sufficient to accomplish this purpose. "It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as [] Counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 164 F.R.D. at 368; *see also Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988). Here, the form and method of Class Notice to FLSA Settlement Class Members and Collective Opt-In Class Members as agreed to by the Settling Parties satisfies all due process considerations and meets the requirements of FED. R. CIV. P. 23(e)(1)(B).

Pursuant to paragraph 2.7 of the Stipulation, within ten (10) days after the Court

enters the Preliminary Approval Order, Defendant shall prepare the name and Last Known Address for each Class Member so that the Claims Administrator can engage in the processing and mailing of each Class Notice.  In addition, Class Counsel shall provide the Claims Administrator with the Last Known Address for each Collective Opt-In Class Member to the extent that Class Counsel has an updated address for any Collective Opt-In Class Member since they filed their consent form to participate in the Litigation.  Prior to mailing the Class Notice (which is to occur within twenty-one (21) days following the Court's entry of the Preliminary Approval Order), the Claims Administrator will undertake a Reasonable Address Verification Measure to ascertain the current accuracy of the Last Known Address of each Class Member.  The Claims Administrator will facilitate the mailing of the Class Notice, via first class mail through the United States Postal Service, to all Class Members at their Last Known Addresses, postage pre-paid, by the Notice Mailing Deadline.

Each Class Notice will be pre-printed with the number of Compensable Work Months and Adjusted Compensable Work Months worked by the Class Member during the Class Period.  In addition, each Collective Opt-In Class Notice will state that the Class Member shall receive a Collective Opt-In Class Participation Payment, which shall be a sum of $1,000, in addition to their pro-rata portion of the Net Settlement Amount, for being a Member of the Collective Opt-In Class, unless the Class Member returns a timely and valid Election to Opt Out of Settlement and Class Action Form.

The Claims Administrator will undertake measures to ensure that any Class Notices returned by the United States Postal Service with a forwarding address is re-

mailed promptly. If a Class Notice is returned without a forwarding address at least fourteen (14) days prior to the Notice Response Deadline—ninety (90) days after the Claims Administrator mails the Class Notice—the Claims Administrator shall perform a standard skip trace to ascertain the current address of the Class Member and will promptly re-mail the Class Notice within fourteen (14) days of receipt of the updated information. In either event, the Class Member will have up to ten (10) days after the Notice Response Deadline to file a response, if any.

If a Class Member whose address has not been deemed unknown by the Claims Administrator has not submitted some form of a written response to the Class Notice at least thirty (30) days prior to the Notice Response Deadline, the Claims Administrator shall send that Class Member a reminder postcard explaining that the Class Member must respond by the Notice Response Deadline if he or she so desires.

The deadline to return Claim and Consent to Join Settlement Forms and Election to Opt Out of Settlement and Class Action Forms shall be ninety (90) days after the Claims Administrator mails Class Notice to Class Members.

Further, within ten (10) business days following the filing of the Settling Parties' Stipulation with the Court, Defendant shall serve upon the Office of the Comptroller of the Currency of the United States and the appropriate State official of each State in which any Class Member resides, as determined by RBC's records, a notice of the proposed settlement in compliance with the requirements of CAFA, 28 U.S.C. §1715. The notice recipients will have the opportunity to comment on the proposed Settlement.

Accordingly, Plaintiffs submit that the proposed Class Notice plan satisfies the due

process requirements of FED. R. CIV. P. 23.

## VII. THE PLAN OF ALLOCATION

The Court should approve the Settling Parties' proposed plan of allocation of the Net Settlement Amount to Participating Claimants as fair and reasonable. After deducting from the gross Settlement Consideration of $5,050,000.00 all Administrative Costs (including the costs of the Claims Administrator), attorneys' fees and litigation costs of Class Counsel as approved by the Court, and the individual Class Representative Enhancements as approved by the Court, the resulting Net Settlement Amount will be distributed to Participating Claimants subject to the terms, conditions and procedures set forth in the Stipulation.

In determining the Allocation Formula, the Settling Parties considered the average rate of pay for Securities Brokers, their job duties and Defendant's policies. In order to ensure that the Settlement is fair, each Class Member's allocation will be based on the number of months that he or she worked as a Securities Broker for Defendant during the relevant time period. Therefore, each Collective Opt-In Class Member who does not submit an Election to Opt Out of Settlement and Class Action Form and each FLSA Settlement Class Member who submits a valid Claim and Consent to Join Settlement Form (collectively referred to as "Participating Claimants") will receive a fixed monthly amount for each "Compensable Work Month" during which they were employed as a Securities Broker during the applicable "Class Period." "Compensable Work Month" means the calendar month a Class Member was actively employed as a Securities Broker

40

for more than fifteen (15) calendar days within the Class Period.[13]

In recognition of the "highly compensated employees" exemption under the FLSA which presents obstacles to recovery if a plaintiff's annual compensation is One Hundred Thousand Dollars ($100,000) or higher, the Allocation Formula factors in the months in which a Participating Claimant's monthly pro-rated compensation was $100,000 or higher for a calendar year. A multiplier of 1 shall be given for those Compensable Work Months in which a Participating Claimant's annualized income is $100,000 or higher, and a multiplier of 3 shall be given for those Compensable Work Months in which a Participating Claimant's annualized income is less than $100,000.

Importantly, the payments an individual Class Member may receive can rise in value as a result of the notice and claims process. For example, since the Settlement is entirely non-reversionary and the total Net Settlement Amount will be paid to Participating Claimants, if any of the Collective Opt-In Class Members submits an Election to Opt Out of Settlement and Class Action Form, or less than 100% of FLSA Settlement Class Members submit a Claim and Consent to Join Settlement Form, the amount that each Participating Claimant receives will increase through a reapportioning of the Net Settlement Amount. Further, if a Class Member disagrees with the number of Compensable Work Months that is pre-printed on his or her Class Notice, that individual will have the opportunity to demonstrate that he or she was employed for a greater

---

[13]    Because the Class Representatives filed complaints enabling them to recover for a period pre-dating the Class Period, the Class Period for purposes of calculating the Compensable Work Months for the Class Representatives shall mean the period beginning three years prior to the date when the Class Representative filed his or her complaint through the date of termination of his or her employment with RBC.

number of Compensable Work Months than is reflected in RBC's records by writing his or her correct dates of employment during the relevant Class Period on the Class Notice and providing documents evidencing such dates for investigation by the Claims Administrator.

## VIII.  CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) certify, for settlement purposes only, all state law claims that were or could have been asserted in the Litigation pursuant to FED. R. CIV. P. 23(b)(3), and conditionally certify all federal FLSA claims that were asserted in the Litigation; (3) appoint, for settlement purposes only, Plaintiffs Carlos Alvarez, Ana Blumberg-Markus, Susan Capozzoli, Andres Cruz, Eugene David, Patrick Grattan, Christopher Kennedy, Martin Kulman, Felipe Pazos, and Alberto Roque as Class Representatives; (4) appoint, for settlement purposes only, the law firms of Kessler Topaz Meltzer & Check, LLP, Rose, Klein & Marias, LLP, Thierman Law Firm, Lovell Stewart Halebian LLP, Berman DeValerio, and Head Seifert & Vander Weide as Class Counsel; (5) approve AB Data, Ltd. as the Claims Administrator; (6) preliminarily approve the allocation of the Settlement Consideration presented herein and incorporated in the proposed Class Notice; (7) approve and authorize the mailing of the Class Notice; and (8) set a date for a final Fairness Hearing.  A [Proposed] Preliminary Approval Order has been filed contemporaneously herewith.

Dated: August 16, 2011           Respectfully submitted,

/s/ Peter A. Muhic
**KESSLER TOPAZ MELTZER
& CHECK, LLP**
Peter A. Muhic, Esq.
Michelle A. Coccagna, Esq.
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Chair of the Executive Committee of
Plaintiffs' Counsel*

**ROSE, KLEIN & MARIAS, LLP**
David A. Rosen, Esq.
801 S. Grand Avenue
11th Floor
Los Angeles, CA 90071-4645
Telephone: (213) 626-0571
Facsimile: (213) 719-4677

**THIERMAN LAW FIRM**
Mark Thierman, Esq.
7287 Lakeside Drive
Reno, NV 89571
Telephone: (775) 284-1500
Facsimile:  (775) 703-5027

**LOVELL STEWART HALEBIAN LLP**
John Halebian, Esq.
317 Madison Avenue, 21st Floor
New York, New York 10017
Telephone: (212) 500-5010
Facsimile: (212) 208-6806

**BERMAN DEVALERIO**
Michael J. Pucillo, Esq.
Eserante Building, Suite 900
222 Lakeview Avenue
West Palm Beach, FL 33401
Telephone: (561) 835-9400

43

Facsimile: (561) 835-0322

*Executive Committee of Plaintiffs' Counsel*

**HEAD SEIFERT & VANDER WEIDE**
Vernon J. Vander Weide, Esq.
333 South Seventh Street
Suite 1140
Minneapolis, MN 55403-2422
Telephone: (612) 339-1601
Facsimile: (612) 339-3372

*Liaison Counsel for the Executive Committee of
Plaintiffs' Counsel*